MELVINDALE-NORTHERN ALLEN PARK FEDERATION
OF TEACHERS, LOCAL 1051 v MELVINDALE-NORTHERN ALLEN
PARK PUBLIC SCHOOLS (AFTER REMAND)

Docket Nos. 152208. Submitted January 25, 1995, at Lansing. Decided
     March 22, 1996, at 9:00 A.M. Leave to appeal sought.

Melvindale-Northern Allen Park Federation of Teachers, Local 1051,
     filed with the Michigan Employment Relations Commission unfair
     labor practices charges against Melvindale-Northern Allen Park
     Public Schools, alleging, among other claims, that the respondent's
     refusal to bargain with it during a strike that it had called was an
     unfair labor practice. The MERC dismissed the charges. Local 1051
     appealed. The Court of Appeals, CORRIGAN, P.J., and J. B. SULLIVAN
     and N. O. HOLOWKA, JJ., affirmed in part, but remanded the matter
     to the MERC for clarification and explanation of its determination
     that a public employer's duty to bargain is suspended during the
     pendency of an illegal strike by public employees. Unpublished
     opinion per curiam of the Court of Appeals, issued August 10, 1994
     (Docket No. 152208). The MERC held that it had overruled the long-
     established precedent that the failure of a public employer to bar-
     gain during an illegal strike was an unfair labor practice because it
     found that to require a public employer to bargain during an illegal
     strike would be contrary to the intent of the public employment
     relations act, MCL 423.201 et seq.; MSA 17.455(1) et seq., to prohibit
     strikes by public employees.

     After remand, the Court of Appeals held:

     1. The MERC, as an administrative agency, may reexamine its prior
     decisions and depart from precedents. If the departure from a pre-
     cedent is explained, appellate review is limited to whether the
     rationale for the departure is so unreasonable as to be arbitrary
     and capricious.

     2. The MERC's stated rationale for departing from the precedent in
     this case cannot be said to be arbitrary and capricious. The MERC
     rejected the precedent and adopted its present determination on
     the basis of its determination of the Legislature's intent as
     expressed in the PERA. The MERC did not abuse its discretion in rul-
     ing that a public employer does not commit an unfair labor prac-
     tice by refusing to bargain with the representative of its employees

who are engaged in an illegal strike during the pendency of that strike.

Affirmed.

1. ADMINISTRATIVE LAW — PRECEDENT — JUDICIAL REVIEW.

An administrative agency may reexamine its prior decisions and depart from precedents; if a departure from precedent is explained, appellate review is limited to whether the rationale is so unreasonable as to be arbitrary and capricious.

2. LABOR RELATIONS — PUBLIC EMPLOYERS — UNFAIR LABOR PRACTICES — ILLEGAL STRIKES.

A public employer may, but has no duty to, bargain with the representative of its employees when they are engaged in an illegal strike; a public employer's refusal to bargain with the representative of its employees during the pendency of those employees' illegal strike is not an unfair labor practice under the public employment relations act (MCL 423.210[1][e]; MSA 17.455[10][1][e]).

*Mark H. Cousens*, for charging party.

*Allen, James, Tanner & Foley, PC* (by *Kevin J. Foley*), for respondent.

Amici Curiae:

*Mark H. Cousens*, for Michigan Federation of Teachers and School Related Personnel.

*White, Beekman, Przybylowicz, Schneider & Baird, P.C.* (by *Thomas A. Baird*), for Michigan Education Association.

*Sachs, Waldman, O'Hare, Helveston, Hodges & Barnes, P.C.* (by *Theodore Sachs* and *Eileen Nowikowski*), for Detroit Federation of Teachers and Michigan State AFL-CIO.

Before: CORRIGAN, P.J., and J.B. SULLIVAN,* and N. O.

---

\* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Administrative Order No. 1993-6.

HOLOWKA,** JJ.

PER CURIAM. Melvindale-Northern Allen Park Federation of Teachers, Local 1051, appealed as of right the decision of the Michigan Employment Relations Commission affirming the dismissal of its claim against the Melvindale-Northern Allen Park Public Schools, which alleged unfair labor practices under the public employment relations act, MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.* In an unpublished decision, we affirmed in substantial part, but remanded for clarification and explanation of MERC's determination that an employer's duty to bargain is suspended during the pendency of an illegal strike. In an expanded opinion on remand, MERC reaffirmed its earlier holding. We now affirm.

Section 10(1)(e) of the PERA provides:

> It shall be unlawful for a public employer or officer or agent of a public employer . . . to refuse to bargain collectively with the representatives of its public employees, subject to the provisions of section 11. [MCL 423.210(1)(e); MSA 17.455(10)(1)(e).]

At the time in question, § 15 provided:

> A public employer shall bargain collectively with the representatives of its employees as defined in section 11 and is authorized to make and enter into collective bargaining agreements with such representatives. For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the

---

** Circuit judge, sitting on the Court of Appeals by assignment.

execution of a written contract, ordinance or resolution incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession. [MCL 423.215; MSA 17.455(15).]

The Legislature enacted the PERA in 1965.[1] MERC first considered whether the employer's duty to bargain continues during the pendency of an illegal strike in 1970. In *Saginaw Twp Bd of Ed v Saginaw Twp Ed Ass'n,* 1970 MERC Lab Op 127, the majority opinion held that the duty continues and that an employer may be found to have committed an unfair labor practice if it refuses to bargain in good faith while its employees are engaged in an illegal strike.

Neither the Supreme Court nor this Court subsequently addressed the issue in a published opinion.

---

[1] Before the PERA, public employees in Michigan did not have the right to bargain collectively. That right was granted with the clear understanding that public employees, unlike their private counterparts, had no right to strike. *Lamphere Schools v Lamphere Federation of Teachers,* 400 Mich 104, 116; 252 NW2d 818 (1977). Public employees obtained organizational and bargaining rights, but they were required to forfeit the right to strike, unlike persons covered by the NLRA, under which a strike can be a permissible economic weapon.

To require a public body to bargain with illegally striking employees thus really disturbs rather than fosters the delicate balance between the public employer and public employees that the PERA seeks to foster. If the legislative preamble and purpose of the PERA is to be given any meaning, illegally striking public employees should not be permitted to reap the benefits of their illegal conduct. Resolution of a labor dispute between public employees and their employers is not, under our legislative scheme, to be resolved by a work stoppage, but rather through fact finding following mediation, i.e., the governing statutory scheme. In other words, the Legislature in the PERA envisioned a scheme in which a factfinder's recommendation would create public pressure on the recalcitrant party to accept the factfinder's nonbinding recommendation. That scheme is rendered superfluous if the employer is required to bargain during a strike-induced crisis. The Legislature's wisdom in prohibiting strikes is lost by allowing a union to profit through undermining the carefully wrought legislative scheme.

Until this case, MERC followed the rule in *Saginaw Twp*. In its original decision in this case, MERC held that it had incorrectly decided *Saginaw Twp*. MERC failed, however, to fully develop its reasons for reaching this conclusion. After remand from this Court, MERC rectified its omission:

> The [dissenting opinion prior to remand] first raises the question of why we decided to change our well established rule that a public employer must meet with the union during a strike, even though that strike is illegal under PERA. *Melvindale-Northern Allen Park Public Schools*, 1992 MERC Lab Op 400, 410. We acknowledge that our original decision clearly, although perhaps too summarily, overruled *Saginaw Twp, supra*. Why change a rule which has been in existence since 1970? We share with the dissent a respect for the value of established precedent. However, after serious consideration, we find the reasoning of the majority opinion in *Saginaw Twp* to be erroneous. As discussed in detail below, we conclude that the principle established by *Saginaw* is inconsistent with the purposes of the Act and therefore should not be allowed to continue to stand. Our conclusion here has nothing to do with public satisfaction or dissatisfaction with the rule, but is based solely on our analysis of the statute.

> The preamble to PERA reads as follows:
>
> "AN ACT to prohibit strikes by certain public employees; to provide review from disciplinary action with respect thereto; to provide for the mediation of grievances and the holding of elections; to declare and protect the rights and privileges of public employees; and to prescribe means of enforcement and penalties for the violation of the provisions of this act."
>
> The dissent states, at pg 411, that "the Public Employment Relations Act was adopted to create a balance between the public employer and the public employee in the matter of labor-management relations to foster an equitable adjustment of interests, and to ensure fundamental

fairness for all concerned." This statement is true, but it only partially describes the Legislature's intent. As indicated by the preamble, it is also the purpose of PERA, like the Hutchinson Act which preceded it, to prohibit public employee strikes. Indeed, the language of the preamble, carried over from the Hutchinson Act, suggests that prohibition of strikes is a primary purpose of the Act. We agree with the dissent that one of the purposes of the statute is to preserve a "balance" between public employers and public employees and their representatives. However, unlike bargaining under the NLRA [National Labor Relations Act], the system of collective bargaining contemplated by PERA is founded on the premise that public employees will not strike. In return for depriving employees of the right to strike, essential under the NLRA, the Legislature in PERA provided employees with a fact finding procedure to help resolve disputes. Moreover, because of the strike prohibition, the Commission and the Courts have construed Section 15 of PERA more expansively than its NLRA counterpart to require mandatory bargaining on a wider range of subjects. *Van Buren [Public] School District v Wayne Circuit Judge*, 61 Mich App 6, 27 [232 NW2d 278] (1975). Whether or not these measures actually achieve their aim of preserving the balance between the parties is beside the point. We conclude that to force an employer to the negotiating table while its employees are engaged in an illegal strike would be contrary to the intent of the statute. Moreover, we conclude that the mutual obligation to negotiate in good faith cannot occur during the pendency of an illegal strike.

The dissent, at pg 411, goes on to point out that "parties to a public sector labor dispute can never resolve their differences unless they talk." This is obvious. Many employers, when faced with public pressure to quickly end the strike, may voluntarily continue to bargain. However, the question here is whether when an illegal strike occurs we can legitimately force an employer to the bargaining table under Sections 10(1)(e) and 15 simply because doing so will result in a faster resolution of the dispute. We conclude that under the statute an employer should not be found guilty of bargaining in bad faith if it chooses to suspend bargaining until

the employees comply with their statutory obligation to return to work.

MERC held that a public employer may, but has no duty to, bargain with the representative of its employees when they are engaged in an illegal strike. A public employer's duty to bargain is inextricably interwoven with a public employee's duty to refrain from striking. Thus, when public employees breach that duty, the suspension of the employer's duty neither penalizes the union or the employees nor provides a remedy to the employer. The suspension of the public employer's duty to bargain is a consequence of the illegal strike not a penalty for it. MERC held that the union's duty to bargain in good faith continues during the strike and left for future consideration whether an illegal strike provoked by the employer's own actions, commonly called an unfair labor practice strike, would require a different result.

MERC's opinion overruling *Saginaw Twp* reinterprets the statute by relating the duty to bargain to other obligations imposed by the PERA. This case, therefore, implicates principles regarding the administrative construction of a statute. The courts are obliged to give great deference to the construction placed upon a statute by the agency legislatively chosen to enforce it. *Breuhan v Plymouth-Canton Community Schools*, 425 Mich 278, 282-283; 389 NW2d 85 (1986), citing *Magreta v Ambassador Steel Co*, 380 Mich 513, 519, 158 NW2d 473 (1968).

Generally, an administrative agency may reexamine its prior decisions and depart from precedents. As our Court noted in *AFSCME, Council 25 v Wayne Co*, 152 Mich App 87, 98; 393 NW2d 889 (1986):

> The decision of an agency to promulgate law through rule-making or through adjudication rests within the sound discretion of that agency even where a rule breaks from past decisions or where previously established rules are reconsidered. *NLRB v Bell Aerospace Co*, 416 US 267, 297-295; 94 S Ct 1757; 40 L Ed 2d 134 (1974), dicta overruled in *NLRB v Hendricks Co Rural Electric Membership Corp*, 454 US 170, 186-188; 102 S Ct 216; 70 L Ed 2d 323 (1981).

If the departure from precedent is explained, appellate review is limited to whether the rationale is so unreasonable as to be arbitrary and capricious. *Michigan v Thomas*, 805 F2d 176, 184 (CA 6, 1986); *West Coast Media, Inc v FCC*, 224 US App DC 423, 426-427; 695 F2d 617 (1982).

Applying an abuse of discretion standard, we cannot conclude that MERC's stated rationale is arbitrary and capricious. In the instant case, the MERC held that it improperly decided *Saginaw Twp* because it had failed to accord sufficient weight to one purpose of the PERA, i.e., the prohibition of public employee strikes. MERC concludes that "to force an employer to the negotiating table while its employees are engaged in an illegal strike would be contrary to the intent of the statute." One purpose of the PERA is to prohibit strikes. The PERA presumably accomplishes that purpose by making such strikes illegal, by exposing striking employees to discipline up to and including discharge, and by authorizing injunctions ordering employees to return to work. MERC's rationale for rejecting the precedent stems from concerns related to the appropriate construction of legislative intent. We hold that MERC has adequately articulated its rationale for overruling its 1970 decision.

MERC's decision has not freed employers from the duty to bargain in good faith at reasonable times.

MERC has instead concluded that a public employer acts reasonably and in good faith by suspending bargaining while public employees are illegally striking. In essence, MERC has held that an employer may determine, without committing an unfair labor practice, that it is unreasonable to bargain while employees are illegally striking. When a union calls a strike of public employees contrary to the PERA, it is guilty of a failure to bargain in good faith. Cf. *United Electrical, Radio & Machine Workers, Local 1113 v NLRB*, 96 US App DC 46, 52; 223 F2d 338 (1955):

> The next point concerns the refusal of the Company to bargain with UE after the strike had been called. As to such a refusal on February 28th, the Board reasoned that, even if UE was still the bargaining representative of the employees, the Company was under no obligation to bargain in the absence of notification that the illegal strike had been terminated. This has been the policy of the Board.[11] In the Times Publishing Company case[12] the Board held that a union's refusal to bargain in good faith may remove the possibility of negotiation and thus preclude a finding of a violation by an employer of his duty to bargain. The Report of the House Committee specifically cited that case as obviously correct.[13] As we have indicated, when UE, seeking modification of an existing contract by proposing wage adjustments into the agreed scale, called a strike in flat violation of the contract and of the explicit terms of Section 8(d) of the Act [29 USC 158(d)], it was guilty of failure to bargain in good faith as that term is defined in Section 8(d). The statute has in it many provisions valuable to labor organizations, and protects them in the exercise of their rights, but it does not give them authority to violate the Act wantonly and at the same time to insist upon full measure of the privileges afforded them when proceeding properly.

---

[11] Higgins, Inc, 90 NLRB 184 (1950); United Elastic Corporation, 84 NLRB 768 (1949); Dorsey Trailers, Inc, 80

NLRB 478 (1948), affirmed in relevant part, 170 F2d 589 [(CA 5, 1950)]; Charles E Reed & Co, 76 NLRB 548 (1948).

[12] 72 NLRB 676 (1947).

[13] HR Rep No 245, 80th Cong, 1st Sess 27 (1947).

---

MERC did not abuse its discretion in ruling that public employees who are engaged in an illegal act of striking may not be heard to complain that their employer has committed an unfair labor practice by refusing to bargain with them during the pendency of their illegal strike.

Affirmed.